Steven J. Nataupsky (SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (SBN 156511)
lynda.zadrasymes@knobbe.com
Matthew S. Bellinger (SBN 222228)
matt.bellinger@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Aryeh N. Feinstein (*pro hac vice* forthcoming)
ari.feinstein@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1717 Pennsylvania Ave. N.W., Suite. 900
Washington D.C. 20006
Phone: (202) 640-6400
Facsimile: (202) 640-6401

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## (SOUTHERN DIVISION)

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>                Plaintiff,<br><br>        v.<br><br>MONSTER STRAW COMPANY, LLC, a California limited liability company,<br><br>                Defendant. | Case No. 8:25-cv-2622<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Plaintiff" or "Monster") hereby files this Complaint against Defendant Monster Straw Company, LLC, a California limited liability company ("Defendant" or "Monster Straw"), and alleges as follows:

## I. JURISDICTION AND VENUE

1. This is an action for 1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), 2) trademark infringement under 15 U.S.C. § 1114, 3) unfair competition arising under California Business & Professions Code §§ 17200, *et seq*., and 4) California common law unfair competition.

2. The Court has original subject matter jurisdiction over the federal claims that relate to trademark infringement and false designation of origin, pursuant to 15 U.S.C. §§ 1116 and/or 1121(a), and pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States. The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3. This Court has personal jurisdiction over Monster Straw because, among other reasons, Monster Straw is a California limited liability company and its principal place of business is located in this Judicial District. Monster Straw has also committed acts of trademark infringement, trade dress infringement, false designation of origin, and unfair competition in this Judicial District, including, but not limited to, using infringing marks and trade dress in connection with the advertisement, marketing, promotion, sale, and offering for sale of goods to customers in this Judicial District. These acts have occurred at least through advertising, sales, and offers for sale on Monster Straw's website and Amazon.com. Monster Straw's acts form a substantial part of the transactions,

occurrences, events, and/or omissions giving rise to Monster's claims.

4.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) at least because a substantial portion of the transactions, occurrences, events, or omissions complained of herein took place in this Judicial District.

## II.    THE PARTIES

5.    Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

6.    Upon information and belief, Monster Straw is a limited liability company organized and existing under the laws of the State of California having a principal place of business at 375 Quail Meadow, Irvine, California 92603.

## III.    ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A.    Monster and Its Trademarks and Trade Dress

7.    Monster is a nationwide leader in the business of developing, marketing, and selling beverages and other goods and services.

8.    In 2002, before Monster Straw's acts complained of herein, Monster launched its MONSTER ENERGY® drink brand, bearing its now famous MONSTER® and MONSTER ENERGY® marks.

9.    Monster's best-selling original MONSTER ENERGY® drink, which Monster launched in 2002, is shown below.



10.    Monster's successful line of MONSTER® drinks has grown to include numerous other well-known products, the containers and packaging of which are prominently marked with the MONSTER® and MONSTER ENERGY® marks. Monster's product lines include, but are not limited to, original MONSTER ENERGY®; MONSTER ENERGY® LO-CARB; MONSTER ENERGY® ZERO SUGAR; MONSTER ENERGY® ASSAULT®; MONSTER ENERGY NITRO®; the JUICE MONSTER® line of drinks; MONSTER ENERGY® IMPORT; the MONSTER® RESERVE line of drinks; the MONSTER ENERGY ULTRA® line of drinks; the REHAB MONSTER® (formerly MONSTER REHAB®) line of drinks; and the JAVA MONSTER® line of drinks, among other drinks. The foregoing and all of Monster's other MONSTER®-branded drinks are referred to collectively herein as the "MONSTER® line of drinks."

11.    In addition, since 2002, Monster has consistently used a distinctive trade dress in connection with the product packaging and promotional materials for its MONSTER® brand.  This trade dress includes prominent use of the colors green and black, or green, black, and white, in combination with the MONSTER® mark (the "MONSTER Trade Dress").  An example of the MONSTER Trade Dress as

- 3 -

1   displayed on the original MONSTER ENERGY® drink is shown in Paragraph 9,

2   *supra*.

3        12.    The MONSTER Trade Dress exclusively serves to distinguish

4   Monster's goods and services from those of others.  The trade dress is also non-

5   functional.  The trade dress does not describe the content of Monster's drinks.

6   Monster's exclusive use of the trade dress also does not hinder competition or put

7   competitors at a significant non-reputational disadvantage.  Indeed, the design

8   features of the MONSTER Trade Dress are not essential to the packaging or

9   products, and do not make the packaging or products less expensive or easier to

10  manufacture.

11       13.    Since before the acts of Monster Straw complained of herein, Monster

12  has also continuously used its MONSTER® and MONSTER ENERGY® marks and

13  the MONSTER Trade Dress in connection with a wide variety of other products,

14  including beverageware, such as cups, glasses, mugs, and water bottles, and

15  beverageware-related goods, such as bottle openers, coasters, bar accessories, bar

16  mats, and coolers.  Some of Monster's beverageware also include straws.

17  Examples of beverageware and related goods distributed or licensed by Monster

18  bearing the MONSTER® and MONSTER ENERGY® marks and the MONSTER

19  Trade Dress are shown below:







14.    Monster is also the owner of numerous trademark registrations for its MONSTER® and MONSTER ENERGY® marks, in connection with beverages, beverageware, and other goods and services, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER | 6,760,278 | energy drinks; fruit drinks; soft drinks; sports drinks | 8/26/2021 | 6/14/2022 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 5,820,689 | *inter alia*, beverageware; insulated beverage containers for domestic use; bottles, sold empty; drinking bottles for sports; water bottles sold empty; bottle openers | 1/15/2019 | 7/30/2019 |
| MONSTER ENERGY | 4,036,681 | non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 9/11/2007 | 10/11/2011 |
| MONSTER ENERGY | 4,036,680 | nutritional supplements in liquid form | 9/11/2007 | 10/11/2011 |
| M MONSTER ENERGY | 3,134,842 | beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/7/2003 | 8/29/2006 |
| M MONSTER ENERGY | 3,044,314 | nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized | 5/23/2003 | 1/17/2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | or not | | |
| MONSTER ENERGY | 3,044,315 | nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/23/2003 | 1/17/2006 |
| MONSTER ENERGY | 3,057,061 | fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 4/18/2002 | 2/7/2006 |

15.    Copies of the foregoing registrations are attached hereto as **Exhibits A1–A8.** Collectively, the above registrations and trademarks, including all common law rights therein, are referred to as the "MONSTER Marks."

16.    Under 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 3,057,061, 3,044,315, 4,036,681, 4,036,680, and 3,134,842 are each incontestable.

17.    Monster's MONSTER® line of drinks has achieved substantial commercial success. Since 2002, Monster has sold approximately 63.8 billion cans of its MONSTER® line of drinks worldwide, the vast majority of which sales occurred in the United States. Currently, by unit volume and dollar value, the MONSTER® line of drinks are among the top two best-selling energy drinks in the United States. Monster has generated over $1 billion in gross sales in the United

States of the MONSTER® line of drinks each year since 2011.  Monster generated over $4 billion in gross sales in 2024 alone.

18.    Monster's beverages are sold at hundreds of thousands of locations across the United States, including convenience stores, grocery stores, and mass retailers.  In addition, Monster sells and distributes its beverageware-related goods to customers and consumers throughout the United States, and also licenses the MONSTER Marks and MONSTER Trade Dress for use on beverageware-related goods.

19.    Monster also uses its MONSTER Marks and MONSTER Trade Dress in connection with extensive marketing campaigns.  Monster has and continues to widely market and promote its MONSTER Marks and MONSTER Trade Dress to consumers by, for example, displaying the marks and trade dress on merchandise and product samplings; extensively on billions of cans of beverages; on promotional and point-of-sale materials; in magazines and other industry publications; on Monster's websites and social media sites; at trade shows and other live events; and through the sponsorship of athletes, teams, and sports events, music festivals, and other live events. Since 2002, Monster has spent over $8.5 billion marketing and promoting the MONSTER® brand, including the MONSTER Marks and MONSTER Trade Dress, in the United States alone.

20.    As a result of Monster's substantial use and promotion, and since before the acts of Monster Straw complained of herein, the MONSTER Marks and MONSTER Trade Dress have acquired immense value as specific identifiers of Monster's products and services, and serve to distinguish Monster's products and services from those of others.  Customers in this Judicial District and elsewhere readily recognize Monster's MONSTER Marks and MONSTER Trade Dress as distinctive designations of the origin of Monster's products and services. The MONSTER Marks and MONSTER Trade Dress are intellectual property assets of enormous value, serving as symbols of Monster and its quality products, services,

reputation, and goodwill.

**B.    Monster Straw's Infringing Activities**

21.    Monster Straw is engaged in the business of producing, selling, and distributing drinking straws.    Monster Straw owns and operates the website https://monsterstraws.com/          and          the          Facebook          page https://www.facebook.com/p/Monster-Straw-Super-Wide-Shake-Smoothie-Straws-100063119805719/.

22.    Without permission or consent from Monster, Monster Straw has marketed and sold, and is offering for sale, drinking straws using trademarks and trade dress that are confusingly similar to the MONSTER Marks and MONSTER Trade Dress.  Monster Straw's MONSTER STRAW mark merely adds the generic word "STRAW" to the dominant and distinctive "MONSTER" portion of the mark.  Monster Straw also uses the marks MONSTER BENDER STRAWS and MONSTER SPOON STRAWS, which merely add the descriptive phrases "BENDER STRAWS" and "SPOON STRAWS," respectively, to the dominant and distinctive "MONSTER" portion of those marks.  Monster Straw's MONSTER STRAW, MONSTER BENDER STRAWS, and MONSTER SPOON STRAWS marks are referred to herein as the "MONSTER STRAW Marks."  Monster Straw also uses the color combination of green and black in connection with its infringing MONSTER STRAW Marks.  An example of one of Monster Straw's products and associated marketing materials displaying the MONSTER STRAWS mark is shown below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23.    Without permission or consent from Monster, Monster Straw has infringed Monster's MONSTER Marks and MONSTER Trade Dress in interstate commerce by making, using, promoting, advertising, selling, and/or offering to sell drinking straws using the MONSTER STRAW Marks and by using the word MONSTER in combination with the colors green and black, which are confusingly similar to Monster's MONSTER Marks and MONSTER Trade Dress.

24.    As shown above, Monster Straw's trademarks and trade dress are confusingly similar to Monster's MONSTER Marks and MONSTER Trade Dress. Like Monster, Monster Straw uses the identical word MONSTER as part of its marks.  Monster Straw also sometimes uses the MONSTER STRAW Marks with a green-and-black color combination, which are the same colors that form part of the MONSTER Trade Dress.  The fact that Monster Straw uses a shade of green that is nearly identical to the shade of green that Monster uses increases the likelihood of confusion.

25.    Monster Straw was aware of Monster and at least some of its marks at least as early as 2019.  On July 18, 2018, Monster Straw filed U.S. Trademark Application Serial No. 88/043168 (the "'168 Application") for the mark MONSTER STRAW for "drinking straws" in International Class 21.    On September 10, 2019, Monster filed a Notice of Opposition with the United States Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB") (Opposition No. 91250784).  The Notice of Opposition alleged that there is a likelihood of confusion between Monster Straw's MONSTER STRAW mark for drinking straws and Monster's MONSTER Marks for the covered goods, including, for example, beverages and beverageware.

26.    On April 14, 2025, the TTAB sustained Monster's Opposition and refused registration of the '168 Application after "find[ing] a likelihood of confusion with [Monster Straw's] MONSTER STRAW [mark] and [Monster's] MONSTER mark (Reg. No. 6760278)."    In its decision, a copy of which is attached hereto as **Exhibit A9**, the TTAB made a number of findings, including, without limitation, the following: 1) Monster's beverages and Monster Straw's drinking straws are related goods; 2) Monster's and Monster Straw's channels of trade for their respective goods overlap; 3) Monster's and Monster Straw's consumers overlap; 4) Monster's MONSTER mark is conceptually strong and Monster's MONSTER ENERGY mark has great commercial strength in

connection with energy drinks; 5) the MONSTER and MONSTER STRAW marks are highly similar in sound, appearance, connotation and commercial impression; 6) Monster uses its MONSTER-formative marks on a wide variety of goods and that favors a finding a likelihood of confusion; and, ultimately, 7) there is a likelihood of confusion between Monster's MONSTER mark and Monster Straw's MONSTER STRAW mark.  Monster Straw is collaterally estopped here from contesting those findings by the TTAB.

27.    Despite the judgment entered by the TTAB, Monster Straw continues to market and sell its drinking straw products under its MONSTER STRAW Marks.  On July 25, 2025 and August 4, 2025, Monster sent letters demanding that Monster Straw cease its infringing actions.  Monster Straw did not initially respond to either letter, and later stated in a telephone call that it would not stop its ongoing use of the MONSTER STRAW Marks.

28.    Upon information and belief, Monster Straw's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Monster Straw's products and are intended to cause consumers and potential consumers to believe that Monster Straw's business and the products that they offer are associated with Monster or its MONSTER-branded products or services, when they are not.

29.    Monster Straw has a duty to avoid confusion with Monster and its marks, because Monster Straw entered the market after Monster.  Nevertheless, Monster Straw has purposely promoted, marketed, and/or sold its goods in a manner that is likely to cause confusion with Monster and its products.

30.    By virtue of the acts complained of herein, Monster Straw has created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster's goods and Monster Straw's goods, and has otherwise competed unfairly with Monster.

31.     Upon information and belief, Monster Straw's acts complained of herein have been willful and deliberate.

32.     Monster Straw's acts complained of herein have caused damage to Monster in an amount to be determined at trial, and such damages will continue to increase unless Monster Straw is enjoined from its wrongful acts and infringement.

33.     Monster Straw's acts complained of herein have caused Monster to suffer irreparable injury to its business.  Monster will suffer substantial loss of goodwill and reputation unless and until Monster Straw is preliminarily and permanently enjoined from the wrongful acts complained of herein.

### IV.    <u>FIRST CLAIM FOR RELIEF</u>

### (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))

34.     Monster hereby repeats, realleges, and incorporates by reference paragraphs 1–33 of this Complaint as though fully set forth herein.

35.     This is an action for trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. § 1125(a).

36.     As a result of the widespread use and promotion of Monster's MONSTER Marks and MONSTER Trade Dress, and since before the acts of Monster Straw complained of herein, the marks and trade dress have acquired strong secondary meaning to consumers and potential consumers, in that consumers and potential consumers have come to associate the MONSTER Marks and MONSTER Trade Dress with Monster.

37.     Monster Straw has infringed the MONSTER Marks and MONSTER Trade Dress and created a false designation of origin, by using in commerce, without Monster's permission, trademarks and trade dress that are identical and/or confusingly similar to Monster's MONSTER Marks and MONSTER Trade Dress in connection with Monster Straw's business and the products it offers.

38.     Monster Straw's actions are likely to cause confusion and mistake, or

to deceive as to the affiliation, connection, or association of Monster with Monster Straw, and/or as to the origin, sponsorship, or approval of Monster Straw's products and/or commercial activities, in violation of 15 U.S.C. § 1125(a).

39.    Monster is informed and believes, and on that basis alleges, Monster Straw acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Monster Straw's products are associated with, sponsored by or approved by Monster, when they are not.

40.    Monster is informed and believes, and on that basis alleges, that Monster Straw had actual knowledge of Monster's ownership and prior use of the MONSTER Marks and the MONSTER Trade Dress, and without consent of Monster, has willfully and intentionally violated 15 U.S.C. § 1125(a).

41.    Monster Straw, by its actions, has damaged Monster in an amount to be determined at trial.

42.    Monster Straw, by its actions, have irreparably injured Monster.  Such irreparable injury will continue unless Monster Straw is preliminarily and/or permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## V.    SECOND CLAIM FOR RELIEF

### (Trademark Infringement Under 15 U.S.C. § 1114)

43.    Monster hereby repeats, realleges, and incorporates by reference paragraphs 1–42 of this Complaint as though fully set forth herein.

44.    This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

45.    Monster owns valid and enforceable federally registered trademarks for the MONSTER Marks, including at least the registrations listed in Paragraph 14.

46.    Monster Straw has used in commerce, without permission from

Monster, colorable imitations and/or confusingly similar marks to Monster's MONSTER Marks that are the subject of one or more of Monster's U.S. Trademark Registrations listed in Paragraph 14 above in connection with the advertising, marketing, and/or promoting of Monster Straw's goods. Such use is likely to cause confusion or mistake, or to deceive.

47. Upon information and belief, Monster Straw's activities complained of herein constitute willful and intentional infringements of Monster's registered marks, and Monster Straw acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among consumers and the public and to deceive the public into believing that Monster Straw's goods are associated with, sponsored by, originated from, or are approved by Monster, when they are not.

48. Upon information and belief, Monster Straw had actual knowledge of Monster's ownership and prior use of the MONSTER Marks, and has willfully violated 15 U.S.C. § 1114.

49. Monster Straw, by its actions, has damaged Monster in an amount to be determined at trial.

50. Monster Straw, by its actions, has irreparably injured Monster. Such irreparable injury will continue unless Monster Straw is preliminarily and/or permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VI.  THIRD CLAIM FOR RELIEF

### (Unfair Competition Under California Business & Professions Code §§ 17200 et seq.)

51. Monster hereby repeats, realleges, and incorporates by reference paragraphs 1–50 of this Complaint as though fully set forth herein.

52. This is an action for unfair competition under California Business & Professions Code §§ 17200, *et seq.*

53.    By virtue of the acts complained of herein, Monster Straw has intentionally caused a likelihood of confusion among consumers and the public and has unfairly competed in violation of California Business & Professions Code §§ 17200, *et seq.*

54.    Monster Straw's acts complained of herein constitute trademark and trade dress infringement, unfair competition, and unlawful, unfair, malicious or fraudulent business practices, which have injury and damaged Monster.

55.    Monster Straw, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Monster Straw is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VII.    FOURTH CLAIM FOR RELIEF

### (California Common Law Unfair Competition)

56.    Monster hereby repeats, realleges, and incorporates by reference paragraphs 1–55 of this Complaint as though fully set forth herein.

57.    This is an action for unfair competition under the common law of the State of California.

58.    Monster Straw's acts complained of herein constitute trademark and trade dress infringement and unfair competition under the common law of the State of California.

59.    By virtue of the acts complained of herein, Monster Straw has willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster in violation of the common law of the State of California.

60.    Monster Straw's aforementioned acts have damaged Monster in an amount to be determined at trial.

61.    Monster Straw has irreparably injured Monster.  Such irreparable injury will continue unless Monster Straw is preliminarily and permanently

enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

62.    Monster Straw's willful acts of unfair competition under California common law constitute fraud, oppression, and malice.  Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Monster prays for judgment against Monster Straw as follows:

A.    That the Court render a final judgment in favor of Monster and against Monster Straw on all claims for relief alleged herein;

B.    That the Court render a final judgment that Monster Straw has violated the provisions of 15 U.S.C. § 1125(a) by willfully infringing the MONSTER Marks and MONSTER Trade Dress by using a false designation of origin, through the marketing, offering to sell, and sale of Monster Straw's goods;

C.    That the Court render a final judgment that Monster Straw has willfully violated the provisions of 15 U.S.C. § 1114 by infringing Monster's trademark rights in at least the marks that are the subject of the U.S. Trademark Registrations listed in Paragraph 14 of this Complaint;

D.    That the Court render a final judgment declaring that Monster Straw has willfully violated the provisions of California Business and Professions Code §§ 17200, *et seq.* by committing trademark infringement, trade dress infringement, and unfairly competing with Monster;

E.    That the Court render a final judgment declaring that Monster Straw has violated California common law by unfairly competing with Monster;

F.    That the Court permanently enjoin Monster Straw, its agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, from:

i.  using the MONSTER STRAW Marks in connection with the manufacturing, distributing, shipping, importing, displaying, advertising, marketing, promoting, transferring, offering for sale, or selling of any of Monster Straw's products and/or services;

ii.  using the MONSTER Marks or MONSTER Trade Dress in connection with the manufacturing, distributing, shipping, importing, displaying, advertising, marketing, promoting, transferring, offering or sale, or selling of any of Monster Straw's products and/or services, and/or otherwise using confusingly similar variations of any of the MONSTER Marks or MONSTER Trade Dress in any manner that is likely to create the impression that Monster Straw's products and/or services originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

iii.  filing any applications or continuing to pursue any applications for registration of the MONSTER STRAW Marks or any other trademarks, trade dress, or designs confusingly similar to the MONSTER Marks or MONSTER Trade Dress;

iv.  otherwise infringing any of the MONSTER Marks or MONSTER Trade Dress;

v.  falsely designating the origin of Monster Straw's goods and services;

vi.  unfairly competing with Monster in any manner whatsoever; and

vii.  causing a likelihood of confusion or injury to Monster's business reputation;

G.  That the Court order Monster Straw to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Monster Straw has complied with the injunction pursuant to 15 U.S.C. § 1116;

H.    That Monster Straw be required to account to Monster for any and all profits derived by Monster Straw and all damages sustained by Monster by virtue of Monster Straw's acts complained of herein;

I.    That Monster Straw be ordered to pay over to Monster all damages which Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

J.    That the Court find this case exceptional and order the amount of damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

K.    That Monster be awarded exemplary damages from Monster Straw pursuant to Cal. Civ. Code. § 3294;

L.    That Monster Straw's actions be deemed willful;

M.    That the Court award Monster its reasonable costs, expenses, and attorneys' fees pursuant to at least 15 U.S.C. § 1117;

N.    That the Court order Monster Straw to deliver and destroy all unauthorized materials bearing the MONSTER STRAW Marks, any of the MONSTER Marks or MONSTER Trade Dress, or any confusingly similar marks or trade dress, pursuant to 15 U.S.C. § 1118;

O.    That Monster be awarded restitution and disgorgement; and

P.    That the Court award Monster such other and further relief as this Court may deem just.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

- 19 -

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 21, 2025        By:  /s/ Matthew Bellinger
                                     Steven J. Nataupsky
                                     Lynda J. Zadra-Symes
                                     Matthew S. Bellinger
                                     Aryeh N. Feinstein

                                     Attorneys for Plaintiff
                                     MONSTER ENERGY COMPANY

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: <u>November 21, 2025</u>     By:  <u>*/s/ Matthew Bellinger*</u>
                                          Steven J. Nataupsky
                                          Lynda J. Zadra-Symes
                                          Matthew S. Bellinger
                                          Aryeh N. Feinstein

                                          Attorneys for Plaintiff
                                          MONSTER ENERGY COMPANY